754 So.2d 256 (1999)
STATE of Louisiana
v.
Alfred HOUSTON
No. 98 KA 2658.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
*257 Hon. Charles Shropshire, District Attorney, St. Francisville, for State of Louisiana.
Clayton M. Perkins, Jr., St. Francisville, for Defendant/Appellant, Alfred Houston.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
Defendant, Alfred Houston, an inmate at Louisiana State Penitentiary at Angola, was charged by grand jury indictment with attempted first degree murder, a violation of LSA-R.S. 14:27 and 30. He pled not guilty. After a trial the jury returned the responsive verdict of attempted second degree murder, a violation of LSA-R.S. 14:27 and 30.1. Defendant filed a motion for post verdict judgment of acquittal, which was denied. The trial court sentenced defendant to 40 years at hard labor, to run consecutive to any other sentence defendant was serving.[1] Defendant appealed.

FACTS
Alfred Houston, Valdimer Celius, and Augustus Kimple were inmates housed in the same dormitory at Louisiana State Penitentiary at Angola. While sleeping in his bed around 10:00 a.m. one morning, Celius awoke and discovered he was being stabbed. Kimple, who was also asleep, awoke when he heard the conflict and tried to help Celius. Sergeant Stanley McKnight, who was on rounds in the dormitory, saw Celius with blood all over his shirt and called for other security personnel. McKnight saw that Kimple was also wounded and escorted the two inmates outside. When McKnight looked back into the dorm, he saw defendant holding a handmade prison knife. At first defendant refused to give up the knife while he was in the dormitory, but after another security officer requested the weapon, defendant surrendered the knife.
Defendant was escorted to a room in another area of the prison. Captain Stanley Hughes, an investigator at Angola, entered the room, introduced himself to defendant *258 and explained that he was there to investigate the stabbing incident which occurred that morning. Before Captain Hughes said anything further or was able to advise defendant of his Miranda rights, defendant stated that he had stabbed the two men because of prior incidents in the television room and in the shower. Captain Hughes stopped defendant and advised him that before speaking any further, he (Captain Hughes) needed to advise defendant of his rights. Captain Hughes advised defendant of his Miranda rights and defendant stated, "I guess I need to not say anything else." According to Captain Hughes, defendant's statement lasted less than one minute and the entire interchange lasted only a few minutes.
Celius suffered multiple superficial lacerations and Kimple was admitted to the hospital with a collapsed lung. During their trial testimony, both Celius and Kimple testified that they did not see the man who stabbed them.
Defendant denied stabbing the two inmates; he testified that he was awakened when two fighting inmates, one holding a knife, fell on him. Defendant believed that he was being attacked, grabbed the knife, and heard another inmate holler that he should not have picked up the knife.
Defendant was not sure how he came to have blood on his clothes if he did not commit the stabbing, but speculated that he was bloodied when the inmate who first had the knife fell near his bed. He also explained that he did not surrender the knife when first asked out of fear that he would be attacked by other inmates.
Defendant also claimed that he did not confess the stabbing to Captain Hughes; he explained that because he is a paralegal, he knew his rights and knew not to make a statement incriminating himself, even if it were the truth. He also added that the Captain investigated many incidents and must be mistaken about defendant's confession. Defendant further admitted that he had been serving time in Angola for the last 23 years after pleading guilty to attempted armed robbery and second degree murder.

DEFENDANT'S CONFESSION
In his second assignment of error, defendant contends that his oral statement was inadmissible because it was made without first having been advised of his Miranda rights. At the conclusion of the predicate, the trial judge ruled that defendant's oral inculpatory statement was a spontaneous statement and admissible.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody. State v. Jones, 386 So.2d 1363, 1366 (La.1980); State v. Guidry, 496 So.2d 650, 653 (La.App. 1st Cir. 1986), writ denied, 500 So.2d 420 (La. 1987).
The record indicates that defendant's statement was an unsolicited and voluntary statement made when Captain Hughes first introduced himself to defendant and prior to beginning to question defendant about the incident. The statement was completely unsolicited. The statement was voluntary, spontaneous and not the product of custodial interrogation. Nor was defendant threatened, coerced, or in any way forced to make the statement. Under these circumstances, no Miranda warnings were required. State v. Robinson, 384 So.2d 332, 334-36 (La.1980).
Accordingly, this assignment of error lacks merit.

*259 SUFFICIENCY OF THE EVIDENCE
In assignment of error number one, defendant argues that the state failed to prove the offense beyond a reasonable doubt and that the trial court erred in denying his motion for post verdict judgment of acquittal. Defendant does not elaborate on his argument or provide a specific basis other than to say that the facts do not support the verdict. The state contends that the evidence of defendant's possession of the knife, blood on his clothing and his confession provide sufficient evidence of the elements of the offense.
The standard of review for the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988). The court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La. App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
LSA-R.S. 14:30.1 A(1) provides in pertinent part
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Attempt is defined in LSA-R.S. 14:27 as:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
However, a conviction of attempted second degree murder requires a finding that the defendant had the specific intent to kill. State v. Butler, 322 So.2d 189, 192 (La.1975); State v. Serigny, 610 So.2d 857, 859 (La.App. 1st Cir.1992).
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 472 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La. 1989).
Although the victims could not identify their attacker, the record shows that defendant was found to be in possession of a knife which was apparently used in the stabbing of the two inmates only moments before. Defendant had the weapon in his hand and his clothing was covered with blood. The wound to Kimple's lung, caused by the knife, certainly supports a finding of the required specific intent to kill. Additionally, defendant confessed to stabbing both men with the knife.
*260 After a careful review of the entire record, we conclude a rational trier of fact, viewing all of the evidence, both direct and circumstantial, as favorable to the prosecution as any rational fact finder can, could have determined beyond a reasonable doubt defendant was guilty of attempted second degree murder to the exclusion of any reasonable hypothesis of innocence.
This assignment of error lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
PETTIGREW, J., concurs in part, dissents in part, and assigns reasons.
PETTIGREW, J., concurring in part, and dissenting in part.
The defendant committed the crime charged on/or about May 31, 1997. After being tried and convicted, defendant was sentenced on September 17, 1997, prior to the enactment and effective date of Louisiana Revised Statute 15:301.1.[1]
Paragraph B of the recently enacted La. R.S. 15:301.1, provides:
B. If a sentence is inconsistent with statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
Paragraph D of said statute further provides "Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing." The statutory language, "shall be completed within one hundred eighty days" is mandatory.
In the case at bar, the crime, the conviction, and the sentence all occurred prior to the enactment of this statute. No motion, oral or written, was filed by either the district attorney's office or the trial court judge pursuant to his own motion. Whether the defendant serves his time with or without benefit of parole, probation, or suspension of sentence is of substantive importance. The 180-day period set forth in Paragraph D of R.S. 15:301.1 has long since passed.
It is a well-settled premise of statutory construction that the words chosen by the legislature must be read in context and construed according to their common meaning. La. R.S. 1:3; McMahon v. Louisiana Insurance Guaranty Association, 596 So.2d 1384, 1388 (La.App. 1 Cir.), writ denied, 604 So.2d 970 (La.1992). There is a presumption that no unnecessary words or provisions were used in a law, that is, that no language is meaningless or superfluous. Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir. 1984). When a statute is clear and free from ambiguity, it must be given effect as written. La. R.S. 1:4; Bagert v. State Board of Ethics for Elected Officials, 594 So.2d 922, 923 (La.App. 1 Cir.1992).
It is my further belief that the retroactive application of La. R.S. 15:301.1, to the fact circumstances presented in this case, is constitutionally prohibited since the relevant times and dates occurred prior to the enactment of the statute. La. Const. Art. 1, Sec. 23.
Accordingly, and for the foregoing reasons, the undersigned respectfully concurs in the affirmation of the defendant's conviction, but must respectfully dissent as to the applicability of La. R.S. 15:301.1, to the defendant in this case.
NOTES
[1] We note that the district court did not expressly impose the sentences without benefit of parole, probation or suspension of sentence. However, the sentences are deemed to contain that provision. See LSA-R.S. 15:301.1, as enacted by 1999 La. Acts No. 94, effective August 15, 1999.
[1] La. R.S. 15:301.1 was enacted pursuant to Acts 1999, No. 94, and became effective on August 15, 1999.