970 So.2d 592 (2007)
STATE of Louisiana
v.
Henry James HARPER, Jr.
No. 2007 KA 0299.
Court of Appeal of Louisiana, First Circuit.
September 5, 2007.
*594 Joseph L. Waitz, Jr., District Attorney, Ellen Daigle Dosky, Assistant District Attorney, Houma, Counsel for Appellee State of Louisiana.
Katherine M. Franks, Abita Springs, Counsel for Appellant Henry James Harper, Jr.
Before: PETTIGREW, DOWNING and HUGHES, JJ.
DOWNING, J.
The defendant, Henry James Harper, originally was charged by grand jury indictment with aggravated rape (count 1), a violation of La. R.S. 14:42, and aggravated kidnapping (count 2), a violation of La. R.S. 14:44(1). He pled not guilty to both charges. The State subsequently amended the bill of information as to count 2 reducing the charge to simple kidnapping, a violation of La. R.S. 14:45. The defendant was re-arraigned. He pled not guilty. Following a trial by jury on the simple-kidnapping charge, the defendant was convicted as charged.[1] The State filed a bill of information seeking to have the defendant adjudicated and sentenced as a habitual offender. At the conclusion of a multiple-offender hearing, the defendant was found to be a third-felony habitual offender. He was sentenced to imprisonment at hard labor for seven years. The defendant moved for reconsideration of the sentence. The trial court denied the motion. The defendant now appeals urging the following assignments of error by counseled and pro se briefs:
Counseled Assignments:
1. The evidence offered by the state at trial was insufficient to meet Due Process standards.

*595 2. The trial judge erred in permitting the written statements of Toyomi Johnson and Jammie Smith into evidence. The failure of the state to provide the circumstances surrounding the statements, including the person(s) who wrote them out for the two children and the date and place where they were prepared, should have been fatal to their use at trial. Moreover, the introduction of the statements into evidence over defense objection, without the required foundation, precipitated their prejudicial use for the "truth" of the hearsay allegations contained within them, in violation of the Code of Evidence and [the defendant's] constitutional right to confront his true accusers.
3. The sentence is excessive and inadequately reasoned. The habitual offender prosecution and the resulting lengthy sentence also sanctioned the defendant for going to trial when the plea agreement offered by the state gave [the defendant] no other realistic choice, a violation of his right to Due Process.
4. Counsel's failure to file a motion to reconsider sentence designating the grounds for reconsideration, grounds he had argued during the sentencing hearing, constituted ineffective assistance of counsel.
Pro Se Assignments:
1. The trial judge erred in permitting the juveniles' (Toyomi Johnson and Jammie Smith) statements to be admitted into evidence. Admitting their respective statements into evidence violated appellant's constitutional right to a fair trial by admitting what would otherwise be considered as inadmissible evidence.
2. Appellant was denied due process when the trial court denied a hearing of his pro se motion to suppress witness statements of Toyomi Johnson and Jammie Smith, as well as allowing written evidence to be brought into deliberation without his consent.
3. Counsel's failure to inform appellant of the full consequences of his plea agreement and failure to inform appellant of his ability to withdraw the plea constitutes ineffective assistance of counsel.
Finding no merit in the assigned errors, we affirm the defendant's conviction, habitual-offender adjudication, and sentence.

FACTS
On Valentine's Day 2004, the defendant met Denneshel Valerie ("Denneshel"). Shortly thereafter, Denneshel moved in with the defendant and his two children from a previous relationship. In August 2004, the couple moved to an apartment on Payne Street in Houma, Louisiana. The victim, S.M.,[2] also lived on Payne Street (in a trailer down the street). On October 22, 2004, only eight months after they met, Denneshel and the defendant had a daughter, Henrishell Harper. Henrishell was confined to the hospital because she was born prematurely and needed constant care. In order to be closer to the hospital, Denneshel decided to move to Marrero with her parents. The defendant's children stayed with him.
Shortly after Denneshel left, S.M. and her two children moved in with the defendant and his children. S.M. lived with the defendant until December 2004, when *596 Denneshel returned to Houma after her baby was released from the hospital. S.M. moved back into her trailer on Payne Street, and Denneshel moved back in with the defendant. Despite having reconciled with Denneshel, the defendant did not discontinue his relationship with S.M. Denneshel was aware of the continued relationship and did not have a problem with it. Denneshel never questioned the defendant as to why he was still seeing S.M.
On January 22, 2005, while S.M. and the defendant were helping S.M.'s mother move, Denneshel called the defendant on his cellular telephone. S.M. became upset, and a verbal altercation ensued. S.M. began to question the defendant as to why Denneshel was calling him and whether he was going to leave to be with her. The defendant left S.M. at her mother's residence and walked back to Payne Street because he did not "want to hear all that."
Later that evening, Joyce Kimber ("Kimber") visited S.M.'s mother's house. Kimber lived next door to the defendant. S.M. went home with Kimber to retrieve her children she had left there. While she was at Kimber's home, S.M. received several phone calls and text messages from the defendant. According to S.M., the defendant was upset because she told him that she did not want to continue their relationship. During one of the calls, the defendant told S.M., "Oh, if I catch you I'm going to blues you. Bitch, you better not step outside, whore, I'm going to get you." S.M. explained that by "blues you," the defendant meant he would do anything possible to her. The defendant also sent S.M. a text message that read, "YEA IF THAT'S INCLUDING YOU. BESIDES IF I HAD EVERYTHING I WOULDN'T BE OUT HERE WAITING 4 YOU GOOD OR BAD HOPN IT WORK OUT SO I DON'T HAVE 2 KILL NOBODY AS SWEET AS YOU. LUV ME."
A little while later, after Kimber left the residence, the defendant entered and approached S.M. as she stood in the kitchen talking to Darnell Sneeze, her distant cousin. The events that transpired once the defendant approached S.M. inside Kimber's residence were disputed at trial. S.M. claimed the defendant told her, "[w]hore, say what you were saying. Say what you got to say now, whore." According to S.M., the defendant had his hand in his pocket, but she could see the imprint of a knife inside. The defendant repeatedly threatened to "blues" S.M. S.M explained that upon observing the "mean, devilish" look in the defendant's eyes, she realized that he was not joking. According to S.M., Darnell Sneeze witnessed the encounter, but did not attempt to intervene.
Fearful, S.M.'s focus turned to trying to get away from the defendant. As she walked away from him and towards the bathroom, she told the defendant that she needed to go and give her child a bath. He followed S.M. and the child into the bathroom. Jammie Smith, Kimber's eleven-year-old niece, was inside the bathroom taking a shower. As Jammie peeked her head out of the shower curtain, the defendant pulled out the knife, put it to S.M.'s throat and threatened, "[b]itch, you got five seconds to get the f* * * out of this bathroom or your blood will be all over this m* * * * * f* * * * *. Bitch, I'm going to stab you 15 times." Toyomi Johnson, another of Kimber's nieces, was also present in the house. She walked by the bathroom to see what was going on. The defendant then grabbed S.M. by her ponytail, held the knife to her neck, and forced her to walk outside. S.M. explained that as they walked out of the house, she feared that her "life was over."
The defendant brought S.M. to an area towards the rear of the house. Still armed with the knife, he continued to threaten *597 S.M. He told her, ". . . I might as well do what . . . I got to do to you now because you still going to tell me you don't want me no more after this. . . ." After he realized that there were people passing on the street, the defendant decided to relocate to S.M.'s trailer. The defendant placed the knife in his pocket and demanded that S.M. walk close to him.
Meanwhile, Darnell Sneeze called Iris Smith (Jammie Smith's mother) over to Kimber's residence. Based upon information she received from Jammie, Toyomi, and Darnell Sneeze, Iris Smith called 911.
Once the defendant and S.M. arrived at S.M.'s trailer, the defendant forced S.M. towards the bedroom. He ordered her to get into the bed and refused to allow her to turn on any of the lights. The defendant again threatened to "blues" and "stab" S.M. while asking why she did not want him anymore.
The defendant's version of the events differed substantially. Although he admitted to becoming involved in a verbal altercation with S.M. after Denneshel called him, the defendant denied ever threatening or physically abusing S.M. on the night in question. He denied having a knife and/or forcing S.M. to go anywhere with him. The defendant claimed he went to Kimber's residence, only because S.M. called him and they "made up." He testified that when he approached S.M. in the kitchen, he simply asked her was she still mad at him. He claimed S.M. then voluntarily left Kimber's house with him to go outside. After being outside for a while, he and S.M. decided to go to S.M.'s trailer because she was cold outside despite having been given the defendant's jacket to keep warm. The defendant claimed he did not recall ever sending S.M. the threatening text message.
In response to Iris Smith's call to 911, Officer Neil Abbott, III, of the Houma Police Department was dispatched to the area. Upon arriving at Kimber's residence, Abbott made contact with Jammie and Toyomi, who advised him of what they witnessed between the defendant and S.M. The girls also provided a description of the knife that was used by the defendant. Abbott immediately proceeded to S.M.'s trailer where he and several other officers knocked on the door and announced their presence. There was no response. Based upon the information they received and the fact that they heard movement inside the trailer, the officers made a forced entry into the residence. S.M. hysterically told the officers "nothing happened." S.M. was escorted out of the residence, and the defendant was arrested. As she was leaving the residence, S.M. kept looking back towards the defendant and continuously and spontaneously repeated, "Nothing happened."
While the officers were subduing the defendant, S.M. walked away from the scene and did not return. At trial, S.M. explained that before the police entered the trailer, the defendant told her to tell the police that he did not do anything to her. She further explained that she complied with the defendant's instructions to tell the officers that nothing happened because she was afraid of what he would do to her. She explained that when she left the scene, she hid in a field on Payne Street. She was afraid to fully disclose the events that transpired that night.
When he initially made contact with Jammie and Toyomi, Officer Abbott provided blank witness-statement forms for them to record their statements. He instructed them to bring the statements to the police department once they were completed. Iris Smith later turned over two handwritten statements indicating that the defendant entered Kimber's residence, placed a knife to S.M.'s throat, and stated *598 that he would cut her fifteen times if she did not go with him. One statement was signed by Jammie Smith, the other by Toyomi Johnson.

COUNSELED ASSIGNMENT OF ERROR 1 SUFFICIENCY OF THE EVIDENCE
In his first counseled assignment of error, the defendant contends the evidence presented at the trial was insufficient to support the simple kidnapping conviction. Specifically, the defendant asserts that S.M.'s account of the events was incredible and should have been discredited. He argues that, because S.M.'s story was contradicted by other witness testimony, it is obvious that the jury convicted him based upon his dysfunctional relationships and not on the evidence. Thus, he cites State v. Mussall, 523 So.2d 1305 (La.1988) (a case in which the Louisiana Supreme Court affirmed a reversal of a conviction based on insufficient evidence) and asserts that the jury's verdict was irrational and should be reversed.
In reviewing claims challenging the sufficiency of the evidence, this court must consider, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)(emphasis in original). See also La.Code Crim. P. art. 821(B).
In Mussall, the Louisiana Supreme Court elaborated on how a reviewing court should apply the Jackson v. Virginia standard:
First, a review of a criminal conviction record for sufficiency of evidence does not require a court to "`ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.
The principal criterion of a Jackson v. Virginia review is rationality. . . . [A] criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. Accordingly, under the Jackson methodology a reviewing court is required to view the evidence from the perspective of a hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. . . . If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
Mussall, 523 So.2d at 1309-10 (footnotes omitted).
Louisiana Revised Statute 14:45(A)(1) defines simple kidnapping, in pertinent part, as the intentional and forcible seizing and carrying of any person from one place to another without his consent.
Initially, we note that the defendant does not claim that, if believed, the victim's testimony was insufficient to establish the *599 elements of the offense. Instead, he challenges the jury's decision to believe the victim's story, attacking her testimony as being incredible, inconsistent, and contradicted by the testimony of other State and defense witnesses.
The verdict in this case reflects that, after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victim and rejected the testimony of the other witnesses. In reaching its decision, the jury had before it, and presumably considered, all of the evidence that the defendant claims rendered the victim's testimony unbelievable. After hearing the victim's detailed description of the defendant's actions against her and her testimony indicating that Darnell Sneeze, Jammie Smith, and Toyomi Johnson all witnessed the incident, the jury also heard Darnell Sneeze testify that the defendant did not have a knife, did not grab S.M. by the hair and/or physically abuse her in any other way on the night in question. The jury also heard Darnell Sneeze state that he did not call Iris Smith to Kimber's house. The jury was privy to the testimony of both Jammie and Toyomi, wherein the girls indicated that the defendant did not have a knife despite having previously stated, and signed written statements indicating, that he did.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Houston, 98-2658, p. 5 (La.App. 1 Cir. 9/24/99), 754 So.2d 256, 259; State v. Johnson, 99-0385, pp. 9-10 (La.App. 1 Cir. 11/5/99), 745 So.2d 217, 223; State v. Duncan, 98-1730, p. 18 (La. App. 1 Cir. 6/25/99), 738 So.2d 706, 717 ("A determination of the weight of the evidence is a question of fact, not subject to appellate review."). Thus, a reviewing court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Mussall, 523 So.2d at 1311 ("[T]he reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence."); State v. Juluke, 98-0341, p. 4 (La.1/8/99), 725 So.2d 1291, 1293 (per curiam) ("Given this limited purpose [of the Jackson review], the Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the factfinder at trial.").
Herein, the victim testified that the defendant placed the knife to her throat and forced her from the kitchen of Kimber's residence to the bathroom, then again from the bathroom to the yard, and from the yard to her own residence. The victim further testified that the defendant continued to hold the knife to her throat and threatened to "blues" her at her residence. It is well settled that the testimony of the victim alone is sufficient to prove the elements of the offense. State v. Forbes, 97-1839, p. 5 (La.App. 1 Cir. 6/29/98), 716 So.2d 424, 427. Although defendant argues the victim's testimony was contradicted and impeached by the trial testimony of other witnesses, he fails to acknowledge that the credibility of the other witnesses (Sneeze, Toyomi, and Jammie) was highly questionable. Although these witnesses changed their stories by the time of the trial, Iris Smith specifically testified that Darnell Sneeze contacted her and advised that something was going on at Kimber's residence. Both Iris Smith and Officer Abbott testified that Toyomi *600 and Jammie both provided information that led to the defendant's arrest for aggravated kidnapping. The girls even described the weapon used. Considering the unanimous guilty verdict, it is clear that when faced with conflicting accounts of the events, the jury found the victim credible and gave credence to her version of the events. The jury apparently found the other witnesses (including the defendant) to be incredible. These credibility determinations will not be disturbed on appeal.
Accordingly, after carefully reviewing the evidence, we believe a rational person, in this case, the jury, viewing the evidence in the light most favorable to the prosecution, could have concluded the state proved beyond a reasonable doubt all of the essential elements of simple kidnapping. This assignment of error lacks merit.

COUNSELED ASSIGNMENT OF ERROR 2 ADMISSIBILITY OF WITNESS STATEMENTS
In his second assignment of error, the defendant contends the trial court erred in allowing the written statements of Toyomi and Jammie to be introduced into evidence. Specifically, he asserts the state failed to provide the proper foundation for the introduction of the statements as impeachment evidence and/or recorded recollections. He also argues that the state erroneously used the statements for their substance and not for the limited purpose of impeaching the credibility of the witnesses.
Louisiana Code of Evidence article 607 permits the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of a witness. The article provides, in pertinent part:
A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
* * *
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
* * *
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
When seeking to introduce evidence of a prior inconsistent statement a proper foundation must be established. Louisiana Code of Evidence Article 613 provides:
Except as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of capacity is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so. (Emphasis added).
Initially, we note that contrary to the defendant's assertions in his brief, the record reflects that counsel adequately complied with the foundational mandates of Article 613 as to the written statements in question. Jammie and Toyomi were both questioned extensively regarding what they observed at Kimber's residence on the night in question. Specifically, both girls were asked if the defendant was *601 armed with a knife. Despite having previously signed written statements indicating that the defendant threatened S.M. with a knife to her throat, both girls testified that the defendant did not have a knife. When questioned regarding the written statements, both Jammie and Toyomi testified that they did not actually draft the statements. Instead, they only signed the documents that had been prepared for them after telling family members what happened. Neither child could remember who wrote the statements for them. The State then offered, and was allowed to introduce over defendant's objection, both of the written statements into evidence.
Once the foundation was established, evidence of the prior inconsistent statements was admissible to attack the credibility of the witnesses. La.Code Evid. art. 607(D)(2). Each girl's admission to signing the written statement prepared for her (which was clearly inconsistent with her trial testimony) accomplished her impeachment. At this point, since the state had already accomplished the impeachment of the witnesses through their trial testimony, the written documents of the prior inconsistent statements were inadmissible under Article 607. However, under the current version of La.Code Evid. art. 801(D)(1)(a), which is the controlling law in this matter, the statements were not hearsay and thus, they were admissible not only to impeach, but also as substantive proof of the offense.
Prior to its revision by 2004 La. Acts No. 694, § 1, Article 801(D)(1)(a) provided that a prior statement by a witness is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with his testimony, and was given under oath subject to the penalty of perjury at the accused's preliminary examination or the accused's prior trial and the witness was subject to cross-examination by the accused.
Following the 2004 revision, Article 801(D)(1)(a) now provides that a prior statement by a witness is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is, in a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness's attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.
The amended provision, which is substantially broader than its predecessor, renders most prior inconsistent statements admissible in criminal cases provided the proper foundation is established. Thus, while the prior inconsistent statements in this case were admissible to attack credibility under Article 607(D)(2), pursuant to the 2004 revision to Article 801(D)(1)(a), such non-hearsay statements are admissible for their assertive value, as well. See George W. Pugh et al., Handbook on Louisiana Evidence Law 471-472, authors' note no. 9 to Article 607 (2006).
Therefore, contrary to all of the defendant's various assertions in his brief, the admission of the written statements was not error. This assignment of error lacks merit.
COUNSELED ASSIGNMENTS OF ERROR 3 & 4 EXCESSIVE SENTENCE & INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO FILE A MOTION TO RECONSIDER SENTENCE
In his third and fourth assignments of error, the defendant contends the trial *602 court erred in imposing an excessive sentence. He further asserts the trial court erred in failing to articulate sufficient reasons to justify the sentence imposed. Specifically, he asserts that although the trial court mentioned the sentencing guidelines set forth in La.Code Crim. P. Art. 894.1, the case should be remanded with a directive to the sentencing judge "to articulate real sentencing factors" to support the sentence. The defendant also argues his trial counsel was ineffective in failing to file a motion to reconsider sentence urging all of the grounds for review argued at the sentencing. Specifically, the defendant notes that while his trial counsel did, in fact, ask for reconsideration of the sentence, he did so generally and stated no particular grounds for the request. On appeal, the defendant argues that the seven-year sentence, which is over three times longer than the two-year sentence previously offered during pretrial plea negotiations, tends to indicate that the defendant was penalized for exercising his constitutional right to a trial. The defendant urges this court to consider his claim.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Even a sentence within statutory limits may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985); State v. Lanieu, 98-1260, p. 12 (La.App. 1 Cir. 4/1/99), 734 So.2d 89, 97. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lobato, 603 So.2d 739, 751 (La. 1992).
The Louisiana Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing sentence. La.Code Crim. P. Art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1 Cir.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1 Cir.1988). Remand for full compliance with article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
A claim of ineffective assistance of counsel is analyzed under a two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial counsel was ineffective, a defendant must first show that counsel's performance was deficient, which requires a showing that he made errors so serious that he did not function as "counsel," guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that the defendant was deprived of a fair trial. Defendant must show actual prejudice before relief will be *603 granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the proceeding would have been different. It is unnecessary to address the issues of both counsel's performance and prejudice to him if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-60 (La.App. 1 Cir.1992).
As a third-felony habitual offender, the defendant was exposed to a maximum sentence of ten years imprisonment on the simple kidnapping conviction. La. R.S. 14:45(B) & La. R.S. 15:529.1(A)(1)(b)(i). The trial court sentenced the defendant to seven years at hard labor. Thus, it is clear that the sentence imposed was well within the statutory limits.
In this case, although the trial judge did not list every aggravating and/or mitigating factor, we find the record indicates that the court considered the sentencing criteria and supports the sentence imposed. Prior to imposing sentence, the trial court reviewed the facts of the offense and the defendant's criminal history. In support of the sentence imposed, the court specifically noted, in aggravation, that a dangerous weapon was used in the commission of the offense, the defendant's conduct in the commission of the offense manifested deliberate cruelty to the victim, and the defendant had two prior felony convictions. The court concluded that the defendant was in need of treatment in a custodial environment. The court reasoned that any lesser sentence would deprecate the seriousness of the defendant's crime.
Upon review of the record, considering the reasons for sentence provided by the trial court, the extremely violent circumstances of the instant offense, and the effect the offense had and will continue to have on the victim, we find no abuse of sentencing discretion in this case. The seven-year sentence under the facts and circumstances in this case is not so grossly disproportionate to the severity of the crime as to shock the sense of justice, nor is it needless infliction of pain and suffering, and thus is not unconstitutionally excessive. Contrary to the defendant's assertions, the trial court was not obligated to impose the sentence offered to the defendant in the pretrial negotiations. Once the defendant rejected the two-year sentence and opted to proceed to trial, the sentence to be imposed was left entirely up to the discretion of the trial judge. We do not find that the trial judge abused his sentencing discretion in this case. The trial court was not, in any way, bound by the previously offered sentence. The record clearly supports the sentence imposed.
Accordingly, even if trial counsel's failure to file a more detailed written motion for reconsideration of the sentence constituted deficient performance, the defendant clearly suffered no resulting prejudice since the sentence imposed was not excessive and was fully supported by the record. Thus, the defendant's ineffective assistance of counsel claim must fall. These assignments of error lack merit.
PRO SE ASSIGNMENT OF ERROR 1
By this assignment of error, the defendant again challenges the admissibility of the written statements provided by Toyomi and Jammie. In addition to his claim that the statements were inadmissible hearsay evidence (which is addressed in counseled assignment of error 2), the defendant cites State in the Interest of Dino, 359 So.2d 586(La.), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), and further asserts that the statements should not have been allowed *604 without the requisite showing that the children and their parents "were informed & intelligently comprehended that he [sic] need not make a statement, that any statement made might be used in a court proceeding, and that he [sic] had a right to consult with counsel before or during the making of a statement." (Defendant's pro se brief p. 6).
The defendant's reliance on Dino is misplaced. First, Dino applied to the custodial interrogation of juvenile suspects. The eyewitnesses in question were not suspects subjected to custodial interrogation and thus, their statements were not governed by the mandates of Dino. More importantly, Dino has been overruled. In State v. Fernandez, 96-2719, p. 10 (La.4/14/98), 712 So.2d 485, 490, the Louisiana Supreme Court reinstated the totality of the circumstances standard as the basis for determining the admissibility of juvenile confessions. Thus, even insofar as confessions are concerned, there is no absolute requirement that an attorney or guardian must be present with a juvenile suspect at the time he makes the statement. This assignment of error lacks merit.
PRO SE ASSIGNMENT OF ERROR 2
In his second pro se assignment, the defendant contends he was denied due process when the trial court denied a hearing on his pro se motion to suppress Toyomi's and Jammie's statements. He further asserts that the trial court erred in allowing the jury to take written evidence into the jury room during deliberations.
Initially we note that the defendant's claim regarding the jury's consideration of evidence during deliberations is unsupported by the record. Contrary to the defendant's assertions, the record does not reflect that the jury was ever allowed to examine any evidence during deliberations. The minutes and the transcript reflect that the jury was allowed to view the evidence in open court immediately prior to closing arguments. (R. pp. 11, 377). In fact, the transcript reflects that while the jury was viewing the evidence at this time, the trial court specifically advised that if, during deliberations, the jury requested to have evidence sent in, the documentary evidence could not be sent. (R.p. 377).
Insofar as the defendant argues the trial court erred in failing to hear his motion to suppress the statements of Toyomi and Jammie, we note that the only pro se motion to suppress mentioned in the record is one wherein the defendant sought to suppress "all confessions and physical evidence." (R. pp. 85-86). Contrary to the defendant's assertions on appeal, the defendant never moved to suppress the eyewitness statements. Furthermore, as the proponent of the motion to suppress, it was incumbent on the defendant to move for a hearing and to obtain a ruling on his motion prior to proceeding to trial. Otherwise it may be considered that the motion has been abandoned. See State v. Wagster, 361 So.2d 849, 856 (La.1978).
This assignment of error lacks merit.
PRO SE ASSIGNMENT OF ERROR 3
In his final pro se assignment of error, the defendant contends his trial counsel was ineffective in failing to inform him of the "full consequences of [the] plea agreement" and of "his ability to withdraw plea[.]" (Defendant's pro se brief p. 4).
In his brief, the defendant notes, and the record reflects, that prior to trial of this matter, the state agreed to accept a plea of guilty of the reduced charge of simple kidnapping on the original aggravated kidnapping charge. The defendant signed a Boykin plea form agreeing to accept this plea. However, once the state indicated *605 that it still intended to pursue the aggravated rape charge (which the defendant and his counsel apparently believed would be dismissed), the defendant, pursuant to advice of his counsel, withdrew the guilty plea. (R. p. 85). Defendant's counsel explained to the court, "I couldn't subject him to that possible dilemma." (R. p. 85).
On appeal, the defendant now raises the question of whether the plea bargain was offered in good faith, or was it "just a deceitful proposal to a coerced signature of guilt." (Defendant's pro se brief p. 8). The defendant appears to argue that he was prejudiced by initially accepting the plea agreement. This assignment of error lacks merit because the defendant's conviction was not a result of a guilty plea. The defendant was tried and convicted by a jury. The jury was unaware of any prior plea discussions and/or agreements. Thus, the defendant's prior acceptance of the plea agreement had absolutely no bearing on the outcome of his trial.
In his briefed argument in support of this assignment of error, the defendant also appears to challenge the sufficiency of the evidence to support his conviction. This argument has already been considered and rejected in counseled assignment of error 1. This assignment of error lacks merit.

DECREE
For the foregoing reasons, we affirm the defendant's conviction, habitual-offender adjudication, and sentence.
CONVICTION, HABITUAL-OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
HUGHES, J., dissents with reasons.
PETTIGREW, J., concurs with the results and assigns reasons.
PETTIGREW, J., concurring.
I agree with the majority that defendant's conviction, habitual offender adjudication, and sentence should be affirmed.
I disagree with the majority that the statements of Toyomi Johnson and Jammie Smith were admissible into evidence. Louisiana Code of Evidence article 801 requires that a proper foundation be established before a statement may be admissible. See La.Code Evid. art. 613. In my humble opinion, the State did not establish a proper foundation to admit into evidence these statements. Despite this, under the harmless error doctrine of this State, I am of the opinion the conviction and sentence of the defendant should be affirmed.
HUGHES, J., dissenting.
I respectfully dissent. I agree with Judge Pettigrew that the "statements" of Toyomi Johnson and Jammie Smith were not admissible into evidence. The drafter of these statements, signed by the minor children, is unknown. Given the contradictory testimony of the witnesses, I cannot say with any confidence that the issue was harmless error.
NOTES
[1] The record does not reflect the final disposition of the aggravated-rape charge.
[2] In accordance with La. R.S. 46:1844(W), the victim is referenced only by her initials.