STATE OF LOUISIANA
v.
WARREN L. PEPPERS
No. 2008 KA2130.
Court of Appeals of Louisiana, First Circuit.
March 27, 2009.
Not Designated for Publication.
RICHARD J. WARD, District Attorney, ELIZABETH A. ENGOLIO, Assistant District Attorney, Attorneys for Plaintiff/Appellee. State of Louisiana
Frederick Kroenke, Attorney for Defendant/Appellant, Warren L. Peppers.
Before: PETTIGREW, McDONALD, HUGHES, JJ.
Mcdonald, J.
The defendant, Warren L. Peppers, was charged by grand jury indictment with aggravated rape, a violation of La. R.S. 14:42. He pled not guilty and, following a jury trial, he was found guilty as charged. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating two assignments of error. We affirm the conviction and sentence.

FACTS
The defendant and his wife, Patricia Peppers, lived in a trailer park on U.S. Hwy. 190 West in Port Allen. Alicia Jones, her husband, and Jones's thirteen-yearold son, A.B., lived two trailers down from the defendant. The two families socialized and barbecued. They also bowled together for a few years.
On May 18, 2006, Patricia had a company function the next morning, where there were supposed to be water slides and crawfish. A.B. wanted to attend the function, so he planned to spend the night at the defendant's trailer. About 11:00 p.m., A.B. went to the defendant's trailer. Patricia went to bed about 11:30 p.m. The defendant and A.B. stayed up to watch the movie Rush Hour 2. Shortly before midnight, as they sat on the couch, the defendant jumped on top of A.B. and straddled him. The defendant held both of A.B.'s hands with one hand. With his other hand, the defendant grabbed A.B.'s head and forced his penis into A.B.'s mouth. A.B. struggled and jerked his body to free himself, but could not break away. The defendant then tried to turn A.B. over. A.B. kicked at the defendant and managed to get away. He yelled and ran to Patricia's room and woke her up. He told Patricia the defendant made him suck his penis. Patricia walked A.B. home. A.B. told Alicia that the defendant "stuck his thing" in his mouth. Alicia called 911. A.B. jumped behind his couch in a fetal position and, for some time, refused to come out. By the time the police arrived, the defendant had gone to his sister's house in Livingston Parish.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the trial court erred in not granting the second motion to quash the indictment. Specifically, the defendant contends the indictment for aggravated rape was based on a mistake of fact.
Louisiana Code of Criminal Procedure article 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
The indictment states in pertinent part:
The GRAND JURY OF THE STATE OF LOUISIANA, duly impaneled sworn and charge[d] in and for the body of the Parish of West Baton Rouge . . . charges that ON OR ABOUT MAY 18, 2006, IN THE PARISH OF WEST BATON ROUGE, WARREN L, PEPPERS committed the offense of R.S. 14:42 A, AGGRAVATED RAPE, by committing aggravated rape upon [A.B.] (DOB 11/30/92) contrary to the law of the State of Louisiana and against the peace and dignity of the same.
The defendant filed a motion to quash the indictment because the victim was thirteen years old at the time of the alleged aggravated rape. Under La. R.S. 14:42(A)(4), the crime of rape is an aggravated rape if the victim is under the age of thirteen years. Accordingly, since the victim was too old for 14:42(A)(4) to be applicable, the defendant argued the indictment should be quashed.
At the hearing on the motion to quash, the State informed the trial court that it was going to amend the charge to forcible rape because of the age of the victim. The indictment was amended accordingly. On April 2, 2008, about three weeks prior to trial, the State amended the indictment back to aggravated rape. The defendant filed a second motion to quash.
At the hearing on the second motion to quash, defense counsel argued the State was required to obtain a new grand jury indictment if it wished to go forth with the aggravated rape charge. Since the State initially represented that the victim was under thirteen years of age, according to defense counsel, the State would have to put forward to a new grand jury a different set of facts, other than the age of the victim, to trigger the applicability of the aggravated rape statute. The State responded that the reduction of the charge to forcible rape was a strategy in an attempt to obtain a plea. The State explained it was in plea negotiations with defense counsel.[1] Some plea offers were made to the defendant at that time. Ultimately, however, no offer was accepted. In denying the motion to quash, the trial court noted that the aggravated rape charge had been instituted by grand jury indictment. The indictment was amended down and amended back up, but regardless, as required by law, the State properly instituted the prosecution by indictment by a grand jury. See La. C.Cr.P. art. 382(A).
We agree with the trial court. It is within the power of the State to amend, even substantively, an indictment. There was nothing improper in the State's amending the indictment to a lesser charge, and then amending it again to the original charge. See State v. McShane, 484 So.2d 899, 900-02 (La. App. 1st Cir. 1986). We note, as well, that the original indictment was not based on "a mistake of fact," as asserted by the defendant. There is nothing factually incorrect with the indictment, which states the defendant committed the offense of R.S. 14:42(A), aggravated rape. The defendant states in his brief, "The Grand Jury did not consider evidence as to La. R.S. 14:42[(A)(1)]."[2] However, there is no support for this assertion. Because of the secrecy of a grand jury proceeding, the evidence considered by the grand jury is unknown. The defendant could have requested that the trial court review the grand jury transcripts in camera to determine if information contained therein was favorable to the defendant and material to guilt or punishment. See State v. Higgins, XXXX-XXXX, pp. 35-36 (La. 4/1/05), 898 So.2d 1219, 1241, cert. denied, 546 U.S. 883, 126 S.Ct 182, 163 L.Ed.2d 187 (2005). However, there is no such request by the defendant in the record. In his first motion to quash, the defendant argued that, in the alternative, the State should be compelled to provide a bill of particulars specifying the particular subsection of R.S. 14:42(A) it was relying upon and "the facts committed by the defendant." However, it is not clear from the record how, or if, the State responded.
Regardless, it was clear that more than three weeks before trial, the defendant was aware of the particular subsection of the aggravated rape statute the State was relying on. At the April 17, 2008 hearing on the second motion to quash, defense counsel informed the trial court that on April 2, 2008, at a Prieur hearing, the State orally amended the indictment from forcible rape back to aggravated rape on the grounds "the victim had resisted to the utmost but had been overcome by actual force." The April 2 Prieur hearing is not in the record. However, contained in the record is the Prieur hearing minute entry, which states in pertinent part: "The State then amended the Bill of Information [sic] to reflect the charge of Aggravated Rape. The defendant was arraigned on that charge and entered a plea of not guilty."
Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues the trial court erred in allowing highly prejudicial hearsay into evidence. Specifically, the defendant contends that the "marginally relevant" hearsay statements about incidents involving the defendant, which were used to impeach Patricia Peppers, were overly prejudicial and should not have been allowed into evidence.
Following the State's case-in-chief, defense counsel recalled Patricia to the stand. On direct examination, Patricia testified that she believed the defendant had been faithful to her. On cross-examination, the State asked Patricia if she remembered telling defense counsel that her husband was faithful to her. She responded, "To my knowledge, yes, sir." At the request of the State, a bench discussion ensued. The State pointed out that there were several written statements to the police detailing inappropriate behavior by the defendant. Amanda Howard wrote that in March 2005, the defendant entered the room that she and her daughter were in and began masturbating. The statement notes that Amanda told Patricia about the incident. Blake Johnson wrote that the defendant asked him if he could perform homosexual acts on him. Blake told him "no," but the defendant continued to try to persuade him. Blake continuously refused. Patricia wrote a statement in July 2005 that last night, her husband was arrested. She was told that the night the defendant had gone to her niece's, he went into her (Patricia's) thirteen-year-old nephew's bedroom several times and exposed himself. She was also told by her brother and niece that the defendant had sexually touched the same nephew roughly a year ago. They also informed her that the defendant had approached her fifteen-year-old niece's boyfriend and another one of her nephews, both of whom are adults. In a telephone conversation between the defendant and Patricia, during which the defendant was in jail, he admitted to approaching the male adults, but swore he never touched a minor.
The trial court found that other people telling Patricia about her husband's infidelity did not mean the defendant had been unfaithful. However, the defendant, while in jail, directly informed Patricia that he had approached male adults.
Accordingly, the trial court instructed the State to limit the impeaching evidence to the conversation Patricia had with the defendant.
When cross-examination resumed, the State asked Patricia if she remembered her own statement, wherein she stated that she was told the defendant had gone into her thirteen-year-old nephew's bedroom several times and exposed himself. Patricia responded, "That's what someone else told me." Defense counsel objected and stated, "We just covered this." The trial court explained its limiting instruction again, and informed the State it needed to discuss only those statements where the defendant spoke directly to Patricia. Defense counsel objected, stating, "That's highly prejudicial."
Cross-examination resumed, and the State questioned Patricia about whether the defendant lied to her a lot. Following is the relevant colloquy:
Q. All right. So, he lied to you and  you know what I'm talking about here. He lied to you about that, right?
A. I'm sorry. I don't understand your question. He lied to me about what?
Q. The situation with the males, the adult males.
A. No, sir. He didn't lie that he had ever approached and had conversations with adult males.
Q. That's all?
A. I still do not believe my husband has ever crossed the line in our marriage and engaged in sex with another male or female of any age. I do not believe he did. I think he had thoughts and I think he was tempted, but, no, I do not think he crossed the line.
Q. And, you've never had any reason to think that way? No one ever told you that?
A. No one, no male, no female ever came to me and said, your husband approached me. No, sir, never.
The trial court ruled that the above last statement of Patricia "opened the door for all those statements she wrote down." The trial court further ruled that, since Patricia's written statement referenced Amanda Howard and Blake Johnson, the State could also use Amanda's and Blake's statements for impeachment purposes. Defense counsel objected to the evidence as being "overly prejudicial." When cross-examination resumed, the State used all three statements (Patricia's,
Amanda's, and Blake's) to impeach Patricia's credibility.
Hearsay is a statement, other than one made by the declarant while testifying, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). The statements of Amanda and Blake were introduced by the State, not to prove the truth of those statements, but to impeach the credibility of Patricia. Louisiana Code of Evidence article 607 permits the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of a witness. The article provides, in pertinent part:
A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
* * * *
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
* * * *
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
When seeking to introduce evidence of a prior inconsistent statement, a proper foundation must be established. Louisiana Code of Evidence article 613 provides, in pertinent part:
Except as the interests of justice otherwise require, extrinsic evidence of. . . prior inconsistent statements ... is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.
See State v. Harper, XXXX-XXXX, pp. 11-12 (La. App, 1st Cir. 9/5/07), 970 So.2d 592, 600, writ denied, XXXX-XXXX (La. 2/15/08), 976 So.2d 173.
We find the trial court correctly determined that Patricia "opened the door" to attack when she testified that the defendant was faithful, and that no one ever told her that the defendant approached him or her. Particularly relevant was Amanda's statement, wherein she stated she spoke to Patricia about the defendant coming into the room she (Amanda) was in and masturbating. Accordingly, the trial court did not err in allowing the other statements into evidence for the purpose of attacking the credibility of Patricia.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Plea negotiations were with defense counsel, John P. Aydell, Jr. Subsequently, Joseph K. Scott, III became the defendant's defense counsel.
[2] Subsection (A)(1) states: "When the victim resists the act to the utmost, but whose resistance is overcome by force."